**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**PARKERSBURG DIVISION**

JUSTIN KEITH REYNOLDS,

        Plaintiff,

v.                              CIVIL ACTION NO.   6:13-cv-22604

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Justin Keith Reynold's Complaint seeking review of the decision of the Acting Commissioner of Social Security ("Commissioner") [ECF 2].   By Standing Order entered April 8, 2013, and filed in this case on September 12, 2013, this action was referred to United States Magistrate Judge Cheryl A. Eifert for submission of proposed findings and a recommendation ("PF&R").   Magistrate Judge Eifert filed her PF&R [ECF 15] on August 19, 2014, recommending that this Court deny Plaintiff's motion for judgment on the pleadings [ECF 10], grant Defendant's motion for judgment on the pleadings [ECF 13], affirm the final decision of the Commissioner, and dismiss this matter from the Court's docket.

Pursuant to Rule 72(b)(3) of the Federal Rules of Civil Procedure, the Court must determine de novo any part of a magistrate judge's disposition to which a proper objection has been made.   The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.   *Thomas v. Arn*, 474 U.S. 140, 150 (1985).   Failure to file timely objections constitutes a waiver of de novo review and the Petitioner's right to appeal this

Court's Order.   28 U.S.C. § 636(b)(1); *see also Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F .2d 91, 94 (4th Cir. 1984).   In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

Plaintiff filed a timely objection to the PF&R on September 3, 2014.   (ECF 16.)   For the reasons that follow, the Court **OVERRULES** Plaintiff's objection.

## I.  LEGAL STANDARD

When reviewing final decisions issued by the Commissioner of Social Security, the Court's authority is constrained.   "The findings of the Commissioner . . . if supported by substantial evidence, shall be conclusive."   42 U.S.C. § 405(g).   Substantial evidence "consists of more than a mere scintilla . . . but may be somewhat less than a preponderance."   *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citation omitted).   "The courts are not to try the case de novo."   *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).   Courts, however, must scrutinize the record as a whole to determine whether the conclusions reached are rational.   *Id.* But courts may not reassess conflicting evidence, determine credibility, or substitute its judgment for that of the Commissioner.   *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589).   Should conflicting evidence of disability exist, such that "reasonable minds" could reach inconsistent conclusions, the court must defer to the Commissioner.   *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).   Thus, regardless of whether the reviewing court concurs, the conclusions of the administrative law judge must be upheld if supported by substantial evidence and derived from proper application of the law.   *Hays v.*

*Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972)).

## II.     DISCUSSION

In his objection to the PF&R, Plaintiff argues that the magistrate judge erred in finding that Administrative Law Judge ("ALJ") William R. Paxton correctly determined that Plaintiff failed to meet certain regulatory criteria that would have established that Plaintiff was entitled to disability benefits.   Plaintiff claims that the magistrate judge "supplied [a] *post hoc* rationale that the ALJ did not provide in making his finding at Step Three of the sequential evaluation."[1]   (ECF 16 at 2.) Plaintiff states that the ALJ's stated reasons for his Step Three finding were insufficient and the record does not show that the ALJ weighed all the factors cited by the magistrate judge.  *Id.* Thus, Plaintiff concludes that this Court should reject the magistrate judge's findings and recommendation and remand this case to the agency for "correction of errors made by the ALJ below."  *Id.* at 5.

At the outset, the Court observes that the PF&R thoroughly and accurately reviewed the procedural and factual background of this case and accurately stated the governing legal principles.   Consequently, the Court need not restate what has been so ably described and explained by the magistrate judge in her forty-one-page report.

As detailed in the PF&R, the ALJ conducted the five-step sequential evaluation that an ALJ uses in making the disability determination.   At issue in this case is Step Three of that evaluation.[2]   At Step Three, an ALJ is tasked with considering the medical severity of the

---

[1]   The five-step sequential evaluation process used in making the disability determination is set forth in the PF&R.  *See* ECF 15 at 3–4.

[2]   In the preceding Steps, the ALJ found, at Step One, that Plaintiff had not engaged in substantial gainful activity, as

applicant's impairments.   20 C.F.R. § 404.1520(a)(4)(iii).   If the applicant has an impairment that meets or equals one of the listings set forth in Appendix 1 to Subpart P of the Administrative Regulations No. 4 and meets the duration requirement, the agency will find that the applicant is disabled.   *Id.*

Here, the pertinent listing under the regulations is Listing 12.00, more specifically Listing 12.05C.   Listing 12.05[3] provided in relevant part as follows:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * * * *
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1 (eff. dates June 7, 2011 to June 12, 2012).

The ALJ determined that Plaintiff did not meet any of the criteria in Listing 12.05C.   As described by the magistrate judge, this Listing has three prongs:   (1) evidence of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before age 22; (2) a valid verbal, performance, or full scale IQ of 60 through 70; and

---

that phrase is defined under the regulation.   This finding permitted the ALJ to advance to Step Two.   There, the ALJ found that Plaintiff had several severe impairments, including borderline intellectual functioning.   (ECF 2 at 22–23.) This finding permitted the ALJ to consider Step Three.   Plaintiff has not challenged the Step One and Two findings.

[3]   As noted by the magistrate judge, the term "mental retardation" was replaced with "intellectual disability" in September 3, 2013 version of this Listing.   No substantive changes were made to the Listing.

(3) a physical or other mental impairment imposing an additional and significant work-related limitation of function.

The magistrate judge conducted a thorough analysis of the record and the ALJ's decision. The magistrate judge concluded that the ALJ erred in determining that Plaintiff failed to meet any of the three prongs of Listing 12.05C.   (ECF 15 at 26–31.)   The magistrate judge found that the ALJ's determination that Plaintiff did "not have any deficits in adaptive functioning or significant work-related limitation of function that prevents him from maintaining substantial gainful activity" was not supported by substantial evidence.

In his objections, Plaintiff concurs with these two favorable findings by the magistrate judge.   Defendant did not file any objections to the PF&R and thus has waived de novo review of the magistrate's findings.   28 U.S.C. § 636(b)(1); *see also Snyder*, 889 F.2d at 1366; *Schronce*, 727 F .2d at 94.

Notwithstanding the magistrate judge's findings of error, the magistrate judge determined that the errors made by the ALJ in his Listing 12.05C analysis did not require remand of this case to the Commissioner.   (ECF 15 at 31.)   The magistrate judge reasoned that because Plaintiff is required to meet all three prongs of Listing 12.05C, and because substantial evidence shows that Plaintiff did not meet the second prong of Listing 12.05C, the ALJ's ultimate determination that Plaintiff did not satisfy the requirements of Listing 12.05C was correct and supported by substantial evidence.

Plaintiff objects to the magistrate judge's determination.   He essentially argues that, in making her finding that the ALJ's determination that Plaintiff did not satisfy the requirements of Listing 12.05C, the magistrate judge referenced evidence not cited by the ALJ and made

5

arguments not advanced by the ALJ. Plaintiff essentially argues that the magistrate judge supplied a rationale for the ALJ's conclusion that was not articulated by the ALJ. He cites *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013) for the view that this case must be remanded for further proceedings because of the deficiencies in the ALJ's explanation of his reasoning.

In support of her finding that the ALJ did not err in Step Three of the sequential evaluation, the magistrate judge first noted, correctly, that that the second prong of Listing 12.05C requires proof of subaverage general intellectual functioning through submission of a valid verbal, performance, or full scale IQ of 60 through 70. (ECF 15 at 31.) The magistrate judge also correctly noted that under the regulations the narrative report that accompanies the IQ test results should comment on whether the scores are deemed valid and that an ALJ should resolve any discrepancies between the formal test results and the individual's daily behavior and daily activities. *Id.*

The magistrate judge then described the three intelligence tests of record in the case. *Id.* at 32-33. Notably, each of these three IQ tests was also discussed by the ALJ in connection with his Step Three analysis. (ECF 9–2 at 25–26.) In his Listing 12.05B analysis, the ALJ first reviewed the evidence concerning Plaintiff's intelligence testing. The ALJ stated:

> As for the "paragraph B" criteria of 12.05, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 59 or less. In November 2001, at age 11 the claimant was tested utilizing the Wechsler Intelligence Scale for Children-Third Edition (WISCIII) test to assess intelligence scales. He obtained a verbal IQ score of 55, performance IQ score of 74 and a full-scale IQ score of 62. The examiner noted the significant discrepancy between the claimant's verbal and performance scores and suggested that his actual IQ might fall within a 58 to 69 range. There is no indication in the report that the test scores were deemed valid (Exhibit 15F).
>
> On October 18, 2011, Frank Bettoli, Ph.D., and Gary Stover, M.A., evaluated the claimant and administered the Kaufman Brief intelligence Test-Second Edition

(KBIT -2). The claimant received a verbal standard score of 74, a nonverbal standard score of 55 and an IQ composite of 60. Again, these scores were not deemed valid. The examiners remarked that his obtained scores were an underestimate of his cognitive abilities and not reflective of his capabilities considering school performance and clinical impression. They opined that his cognitive abilities were more consistent with the borderline to low average range of intelligence (Exhibit 13F). Accordingly the undersigned finds there is no valid evidence to substantiate the requirements of the "paragraph B" criteria.

(ECF 9–2 at 25.)

The ALJ then proceeded with his Listing 12.05 C analysis.   In this analysis the ALJ at times referenced his earlier Listing 12.05B analysis.   The ALJ stated:

Finally, the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. In this regard, the "paragraph C" criteria are not satisfied by the record.   As discussed above, at age 11 the claimant was administered the WISC-III test and obtained a verbal IQ score of 55, performance IQ score of74 and a full-scale IQ score of 62.   The examiner noted the significant discrepancy between the claimant's verbal and performance scores and suggested that his actual IQ might fall within a 58 to 69 range.   There was no indication on the report that these test scores were deemed valid (Exhibit 15F).

Thereafter, on July 22, 2010, John Kampsnider, Ph.D., retested the claimant during a psychological examination and administered the Wechsler Adult Intelligence Scale-Third (W AIS-III) test, which revealed that the claimant received a verbal IQ score of 71, performance IQ score of 75 and a full-scale IQ score of 70. Dr. Kampsnider offered a diagnosis of borderline intellectual functioning. Thereafter, on September 21, 2010, Dr. Kampsnider offered an explanatory addendum to his report. He explained that he diagnosed the claimant with borderline intellectual functioning due to the results of scatter among his subtest scores ranging from three to nine. He opined that these findings present a picture of near normal functioning in some areas suggesting that his true IQ is likely closer to the upper seventies or low eighties. He commented that the claimant's report of adaptive functioning also does not suggest that he was functioning in the mild mental retardation range. He was currently semi independent and could travel without supervision. He helped his parents in terms of chores and meeting his own daily needs for grooming and simple meals. Dr. Kampsnider opined that a diagnosis of borderline intellectual functioning would be more descriptive of the claimant's current level of cognitive functioning (Exhibit 5F).

As discussed above, on October 18, 2011, Dr. Bettoli and Mr. Stover evaluated the claimant and administered the KBIT-2, which revealed a verbal standard score of 74, a nonverbal standard score of 55 and an IQ composite of 60. The examiners remarked that his scores were an underestimate of his cognitive abilities and not reflective of his capabilities considering school performance and clinical impression. They opined that his cognitive abilities were more consistent with a finding of borderline to low average range of intelligence (Exhibit 13F).

Accordingly, the undersigned finds that the "paragraph C" criteria are not satisfied. The claimant does not have any deficits in adaptive functioning or significant work-related limitation of function that prevents him from maintaining substantial gainful activity given consideration of the residual functional capacity below.

*Id.*

Plaintiff states in his objection that the magistrate judge incorrectly characterized the ALJ's discussion of these matters as "reconciling the evidence" when "all the ALJ really did was *summarize the evidence* when, for example, he noted that Reynolds tested at age eleven because his father wanted to ascertain whether he had a learning disorder instead of [a] mental impairment due to his embarrassment at being in special education classes."   (ECF 16 at 4.)   Plaintiff claims that "[e]very one of the points cited by the Magistrate Judge as substantial evidence that supports the ALJ's decision to disregard the IQ test results" were not points made or cited by the ALJ.   *Id.*

The Court rejects Plaintiff's contentions.   Each of the reasons the magistrate judge provided for her finding that substantial evidence supported the ALJ's determination that Plaintiff failed to meet the second prong of Listing 12.05C is explicit or readily implicit in the ALJ's findings.   With respect to the ALJ's discounting of the 2001 IQ test—which is the finding at the core of Plaintiff's objection—it is plain from the ALJ's discussion that he rejected this test for several reasons.   First, the ALJ twice referenced Plaintiff's young age at the time the test was administered.   (ECF 9–2 at 25.)   Readily implicit in these statements was the ALJ's concern about the test's validity.   The fact that the magistrate judge acknowledged this obvious and fair

implication does not mean that she supplied reasoning that was otherwise deficient.   (*See* ECF 15 at 37.)   Nor does Plaintiff quarrel with the magistrate judge's citation to regulations that provide that IQ tests obtained from children under age 16 are only deemed current for two years.   The fact that the ALJ did not cite these regulations does not mean that his reasoning was obscure.   In making her findings the magistrate judge also noted the ALJ's emphasis on the fact that the 2011 score was inconsistent with Plaintiff's father's description of Plaintiff's adaptive functioning and Plaintiff's teacher's rating of his functioning.   *Id.*   These observations by the magistrate judge did not supply the reasoning for the ALJ; rather, this was the reasoning of the ALJ.   The magistrate judge also noted that the results of the 2010 and 2011 IQ tests supported the ALJ's conclusion that Plaintiff had borderline intellectual functioning and not mental retardation.   *Id.* Contrary to Plaintiff's characterization, the ALJ was not merely summarizing this particular evidence.   He included this evidence in his discussion of why the Listing 12.05B & C criteria were not met.   These factual assertions were the evidentiary support for his premise that the criteria were not met.

    The Court also rejects Plaintiff's reliance on *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013) for the view that remand is required.   In *Radford*, the Fourth Circuit determined that remand of the case was required because the ALJ's decision regarding the applicability of Listing 1.04A was "devoid of reasoning" and that the ALJ "summarily concluded that Radford's impairment did not meet or equal a listed impairment" and "provided no explanation other than writing that he 'considered, in particular,' a variety of listings, including Listing 1.04A, and not[ed] that state medical examiners had also concluded 'that no listing [was] met or equaled.'" The record here, as the Court has just found, contains an adequate rationale for the ALJ's

determination that Plaintiff did not meet the Listing 12.05C criteria and, thus, Plaintiff's reliance of *Radford* is misplaced.

Accordingly, for the foregoing reasons the Court rejects Plaintiff's contentions and **OVERRULES** his objection.

### III.    CONCLUSION

For the reasons set forth above, the Court **OVERRULES** Plaintiff's objection to the PF&R (ECF 16), **ADOPTS** the PF&R [ECF 15], **DENIES** Plaintiff's motion for judgment on the pleadings [ECF 10], **GRANTS** Defendant's motion for judgment on the pleadings [ECF 13], **DISMISSES** Plaintiff's Complaint [ECF 2], and **DIRECTS** the Clerk to remove this case from the Court's docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        September 29, 2014

_____

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

10